UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JESSE DENNIS EASTERWOOD,

                    Petitioner,                    Case No. 2:20-cv-192

v.                                                 Honorable Janet T. Neff

SARAH SCHROEDER,

                    Respondent.

_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.

Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary

review of the petition to determine whether "it plainly appears from the face of the petition and

any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4,

Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily

dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the

duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes

those petitions which raise legally frivolous claims, as well as those containing factual allegations

that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After

undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed

because it fails to raise a meritorious federal claim.

## Discussion

### I.        Factual allegations

Petitioner Jesse Dennis Easterwood is incarcerated with the Michigan Department of Corrections at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan.  On October 20, 2016, following a four-day jury trial in the Chippewa County Circuit Court, Petitioner was convicted of three counts of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, and three counts of accosting a child for immoral purposes, in violation of Mich. Comp. Laws § 750.145a.  On June 14, 2018, the court sentenced Petitioner to prison terms of 15 to 40 years on each count of CSC-I and 1 year, 11 months to 4 years on each count of accosting a child for immoral purposes.[1]

The Michigan Court of Appeals described the facts underlying Petitioner's prosecution and the trial testimony as follows:

> Defendant's convictions stem from three separate sexual assaults of the 14-year-old victim, DP, while she was babysitting for defendant's infant daughter in the summer of 2015.  According to DP, on each occasion defendant provided her with alcohol before taking her into his bedroom, at least partially undressing her, putting on a condom, and penetrating her vagina with his penis.  DP admitted that she did not report the incidents to anyone other than her then 12-year-old friend, CH, who testified that DP told him in October 2015 that she had been raped by defendant. DP first disclosed the details of the three sexual assaults in December 2015 to Melissa Hagen, a social worker at a youth detention facility where DP was sent after her mother filed an incorrigibility petition.  The social worker, as a mandatory reporter of sexual abuse allegations, reported DP's allegations that she had been sexually abused by defendant, who provided her with alcohol when she went to his house to babysit.

---

[1] The trial court initially sentenced Petitioner to 45 to 70 years on each count of CSC-I; however, that sentence was premised on improper scoring of the offense variables.  While the case was pending on direct appeal, the court of appeals remanded back to the trial court for an evidentiary hearing regarding Petitioner's appeal issues and for reconsideration of the offense variable scoring.  On remand, the trial court recognized the scoring errors and reduced Petitioner's sentences for CSC-I accordingly.  Petitioner completed, and was discharged from, his sentences for accosting a child for immoral purposes about two months before he filed his habeas petition.  *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=290994 (visited Oct. 6, 2020).  He remains incarcerated only on the CSC-I sentences.

Detective Bradley LaCross testified that he interviewed DP at the detention center in January 2016. According to Detective LaCross, DP described three instances when defendant sexually penetrated her vagina with his penis after he offered her beer and cigarettes and after he put on a condom. After further investigation, police arrested defendant in April 2016. Police seized defendant's cell phone and obtained a warrant to search for evidence of the sexual assaults. Police found text messages between defendant and his fiancé in which his fiancé confronted defendant about his purchasing condoms because they did not use condoms in their relationship. Defendant claimed that he purchased the condoms to give to his sons. Defendant's sons, however, denied that defendant offered them condoms in the summer of 2015. Police also found evidence that defendant used his cell phone to visit an Internet pornography site called "Banging the Babysitter."

During trial, the prosecution presented evidence from two other-acts witnesses. TL, the mother of defendant's son, testified that defendant had sexual intercourse with her twice without her consent, when she was 14 years old, and that their son was conceived as a result of one of the sexual assaults. MC, defendant's former stepdaughter, testified that defendant raped her in a tent in their backyard when she was 12 years old. According to MC, on the night of the incident, defendant caught MC trying to sneak out of the house to visit a boyfriend. Defendant told her, "You don't need to do these things with your boyfriend because I'm here. Because I'm available." Defendant then took MC to the tent and had sexual intercourse with her. Afterward, defendant continued to sexually harass MC, often attempting to adjust her bra.

MC further testified that, when she was 17 years old, defendant tried to prevent her from moving out of the house, so she attempted to strike him with a baseball bat. MC pleaded guilty to felonious assault for that incident. The trial judge in this case, who was then a criminal defense attorney, represented MC in her criminal case. MC testified that she did not tell anyone about the sexual assault until shortly before the trial in this case. The implication of MC's testimony was that she did not tell her criminal defense attorney about the sexual assault. At trial, defense counsel orally moved to disqualify the trial judge from the case based on the judge's prior representation of MC in her criminal case. Defense counsel did not timely move to disqualify the trial judge under MCR 2.003(D)(1)(a) and did not file an affidavit at the time he made the oral motion to disqualify the trial judge. The trial judge declined to disqualify himself from the case and defendant did not refer the issue to the chief judge.

Defendant testified and denied the allegations of sexual assault, as well as the allegation that he provided DP with alcohol. Defendant testified that his sexual acts with TL were consensual. Defendant suggested that MC falsely accused him because she was close with her mother, who did not get along with him, and claimed that MC had a history of drug abuse and needed mental counseling. Defendant also suggested that DP was a troubled teen who "made up this claim to get out of trouble."

3

(Mich. Ct. App. Op., ECF No. 1-6, PageID.136-138.)  "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)."  *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted).  Although Petitioner maintains his innocence, he does not deny that the complainant's testimony, or the testimony of the "other acts" witnesses, was exactly as the court of appeals described, and his habeas challenges do not contend that the state appellate court unreasonably determined the facts described above.

On September 28, 2020, Petitioner timely filed his habeas corpus petition raising three issues:

I.    Petitioner was denied his due process right to a fair trial when the judge that presided over his case had also represented a key other acts witness as a defense attorney and the judge did not disqualify himself.  Alternatively, he was denied the effective assistance of counsel.

II.   Petitioner was denied his right to be free from unlawful searches and seizures when the police pulled his internet history and other text messages from his phone despite the fact that it was outside the scope of the search warrant.  In the alternative, he was denied the effective assistance of counsel by his attorney's failure to move to suppress the evidence before trial.

III.  Petitioner was denied his right to a fair trial by the repeated admission of hearsay statements made by the complainant for the sole purpose of bolstering her testimony in a case that primarily came down to credibility.

(Pet., ECF No. 1, PageID.18, 23, 26.)

## II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a

4

decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being

presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Petitioner does not address the AEDPA standard in raising his habeas grounds. Instead, he simply refers the Court to the arguments he raised in the Michigan Court of Appeals and the Michigan Supreme Court.  Because Petitioner simply repeats the same arguments, Petitioner's arguments do not consider whether or not the state appellate court's rejection of his claims was contrary to, or an unreasonable application of, clearly established federal law.  Nor does Petitioner attack the factual findings of the state appellate court as unreasonable.

## Discussion

### A.    Judicial bias

Petitioner claims that he was denied due process because the judge was biased against him.  That bias, Petitioner argues, arose from the judge's representation of "other acts"

6

witness, MC, in a felonious assault prosecution where Petitioner was the victim.  The Michigan

Court of Appeals addressed Petitioner's claim as follows:

> MCR 2.003(C)(1)(b) provides that disqualification of a judge is warranted if
>
>> [t]he judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.
>
> Under MCR 2.003(C)(1)(c), disqualification of a judge is warranted if "[t]he judge has personal knowledge of disputed evidentiary facts concerning the proceeding." Furthermore, Canon 2(A) of the Michigan Code of Judicial Conduct provides:
>
>> Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges.  A judge must avoid all impropriety and appearance of impropriety.  A judge must expect to be the subject of constant public scrutiny.  A judge must therefore accept restrictions on conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.
>
> Disqualification of a judge under MCR 2.003(C)(1)(b) is focused on the appearance of impropriety and possible due process violations. See *People v Aceval*, 486 Mich 887, 889; 781 NW2d 779 (2010).  To determine whether an appearance of impropriety exists, this Court considers "'whether the [judge's] conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired.'" *Id.*, quoting *Caperton*, 556 US at 888.  In terms of due process, a judge should be disqualified only in those "extreme cases," *People v Roscoe*, 303 Mich App 633, 647; 846 NW2d 402 (2014), in which, objectively viewed, the probability of actual bias on the part of the judge is too high to be constitutionally tolerable, *Caperton*, 556 US at 877.
>
> On appeal, defendant simply declares that the trial judge's prior representation of MC provided grounds for disqualification.  Defendant's argument is speculative and lacks specifics; it provides no discussion of why or how the trial judge's prior representation of a witness satisfies any of the grounds cited.  At most, defendant asserts there was a "clear indication of bias" because "[t]he jury got to hear that [the trial judge] had represented a key witness against Mr. Easterwood as a defense attorney, a fact which later became important in trial when the witness was asked about prior disclosures she made or did not make to her attorney, now the judge." Again, defendant makes a conclusory statement without citing to the record and without discussing how or why MC's testimony demonstrated bias or impartiality on the part of the trial judge.  Defendant fails to note that it was defense counsel

who asked MC if an attorney represented her in her criminal case and asked her the identity of her attorney.  The prosecutor objected on the ground of relevance when defense counsel asked MC whether the trial judge was an "excellent defense attorney [who] properly counseled her."  It was defense counsel who asked MC whether she ever told her attorney about defendant's alleged abuse, and MC responded "no."  Not only did defense counsel elicit the testimony that the trial judge was MCs counsel, he also elicited testimony that MC did not make any disclosures to her attorney.  There was no evidence that the trial judge had any personal knowledge of disputed evidentiary facts concerning this proceeding.  MCR 2.003(C)(1)(c).  Defendant has made no showing of actual bias or prejudice, and has not met the heavy burden of overcoming the presumption of impartiality.  See *People v Johnson*, 315 Mich App 163, 196; 889 NW2d 513 (2016).

(Mich. Ct. App. Op., ECF No. 1-6, PageID.138-139.)

As a preliminary matter, it is important to distinguish between the requirements of due process, on the one hand, and the requirements of the Michigan Court Rules or the Michigan Code of Judicial Conduct, on the other.  The extraordinary remedy of habeas corpus lies only for a violation of the Constitution.  28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry into whether the state court properly applied state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."  *Id.* at 67-68.  Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.

The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  Thus, the state appellate court's determination that the trial judge was not properly disqualified under the court rule or the

code of judicial conduct binds this Court, except to the extent it purports to define the bounds of due process.

"Due process requires a fair trial before a judge without actual bias against the defendant or an interest in the outcome of his particular case." *United States v. Armstrong*, 517 U.S. 456, 468 (1996); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness requires an absence of *actual* bias in the trial of cases.") (emphasis added)). However, because of the difficulty in determining "whether a judge harbors an actual, subjective bias," the courts look to "whether, as an objective matter, the average judge in [that judge's] position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (internal quotations omitted); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883 (2009).

The Supreme Court has recognized constitutionally impermissible, objective indicia of bias in the following types of cases:  (1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," *Tumey v. Ohio*, 273 U.S. 510, 523 (1997) (subsequently expanded to include even indirect pecuniary interest, *see Railey v. Webb*, 540 F.3d 393, 399-400 (6th Cir. 2008); (2) certain contempt cases, such as those in which the "judge becomes personally embroiled with the contemnor," *Murchison*, 349 U.S. at 141 (subsequently clarified to involve cases in which the judge suffers a severe personal insult or attack from the contemnor); and (3) cases in which a judge had prior involvement in the case as a prosecutor, *Williams*, 136 S. Ct. at 1905 (citing *Withrow v. Larkin*, 421 U.S. 35, 53 (1975).  The courts indulge "a presumption of honesty and integrity in those serving as adjudicators." *Withrow*, 421 U.S. at 47; *Coley v. Bagley*, 706 F.3d 741, 751 (6th Cir. 2013) (citing, *inter alia*, *Withrow*,

421 U.S. at 47).  "The presumption of impartiality stems not merely from the judicial-bias caselaw, but from the more generally applicable presumption that judges know the law and apply it in making their decisions, *see Lambrix v. Singletary*, 520 U.S. 518, 532 n. 4 (1997), and the even more generally applicable presumption of regularity, *see Parke v. Raley*, 506 U.S. 20, 30-31." *Coley*, 706 F.3d at 751.

In *Liteky v. United States*, 510 U.S. 540 (1994),[2] the Supreme Court described the showing Petitioner would have to make to succeed on his bias claim:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.  *See United States v. Grinnell Corp.*, 384 U.S. at 583.  In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved.  Almost invariably, they are proper grounds for appeal, not for recusal.  Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.  They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.  An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22 (1921), a World War I espionage case against German-American defendants:  "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty."  *Id.*, at 28 (internal quotation marks omitted).  Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.  A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

---

[2] *Liteky* is a case that addresses the statutory recusal standard for federal judges.  The Sixth Circuit has, nonetheless, relied on *Liteky* to provide the standard for assessing judicial bias claims under the Due Process Clause.  *See Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002); *Lyell v. Renico*, 470 F.3d 1177, 1187 (6th Cir. 2006).

*Liteky*, 510 U.S. at 555-556.

Here, Petitioner argues that having the trial judge presiding over his case created an appearance of impropriety because of the judge's involvement in "related" proceedings, not as a prosecutor—as was the case in *Williams*—but as a defense attorney.  Petitioner's situation, however, is a far cry from the situation in *Williams*.  In *Williams*, the Pennsylvania Supreme Court Chief Justice was accused of bias where he vacated a lower court's grant of relief relating to the petitioner's death sentence and reinstated that death sentence.  Decades earlier, however, the Justice has been the district attorney who authorized pursuing the death penalty for the petitioner in the first place.

The *Williams* Court acknowledged that "the Court's due process precedents do not set forth a specific test governing recusal when, as here, a judge had prior involvement in a case as a prosecutor . . .the principles on which these precedents rest[, however,] dictate the rule that must control . . . ."  *Williams*, 136 S. Ct. at 1905.  The *Williams* Court held that "under the Due Process Clause, there is an impermissible risk of actual bias when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case."  *Id*.

The facts that distinguish Petitioner's case from *Williams* include the following: (1) the trial judge did not serve as a prosecutor in Petitioner's case; (2) the trial judge did not have any prior personal involvement, much less significant involvement, in Petitioner's case; (3) the case that the trial judge did participate in—the prosecution of the "other acts" witness—was unrelated to the prosecution of Petitioner; and (4) there is no evidence in the record that shows that the trial judge, by virtue of his representation of the "other acts" witness, was privy to any information of relevance to the determination of Petitioner's guilt or that the representation had any impact on Petitioner's prosecution.  The court of appeals' determination that Petitioner had

11

failed to demonstrate bias warranting disqualification is, therefore, neither contrary to, nor an unreasonable application of, clearly established federal law.  Moreover, the appellate court's factual determinations based on the facts recited in Petitioner's briefs, are reasonable. Accordingly, Petitioner is not entitled to habeas relief on his due process claim.

Petitioner offers an alternative claim that his trial counsel rendered ineffective assistance when counsel failed to seek disqualification in accordance with the procedure required by state law.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:   (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687.   A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

The court of appeals applied the following standard to resolve Petitioner's ineffective assistance claim:

> To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 687-688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007).

(Mich. Ct. App. Op., ECF No. 1-6, PageID.139.)  There can be no doubt that the appellate court applied the standard required by clearly established federal law, *Strickland*, leaving only the question whether the state court applied that standard reasonably.

The Michigan Court of Appeals concluded that because Petitioner failed to demonstrate that the judge should have been disqualified, he could not establish any prejudice from counsel's failure to follow proper disqualification procedures.  (*Id.*)  Counsel's failure to raise a meritless issue does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010) "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  Therefore, Petitioner has failed to demonstrate that the court of appeals rejection of his ineffective assistance claim relating to disqualification is contrary to, or an unreasonable application of, clearly established federal law.

### B.  Unreasonable search and seizure

Petitioner contends that some of the evidence police derived from his cell phone should have been suppressed because it was obtained in violation of the Constitution.  Petitioner's claim is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976); *see also Queen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims).  In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair

opportunity to litigate the Fourth Amendment claim.  *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

In order for the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985).  If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error.  *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

In the present case, Petitioner cannot satisfy either prong of the *Stone v. Powell* standard.  First, it is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial.  Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures.  *See People v. Margelis*, 186 N.W. 488 (Mich. 1922).  After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment.  *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982).  Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

Second, to satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down.  *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court

completely ignored Fourth Amendment claim).  The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error."  *Gilbert*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner has not alleged any facts showing that the state's mechanism has broken down.  Petitioner did not raise the Fourth Amendment issue in that trial court.  Petitioner argues that the failure to raise the issue was the result of counsel's ineffective assistance.  That raises a separate ineffective assistance of counsel claim; however, it does not suggest that the state's mechanism for addressing Fourth Amendment claims has broken down.  Indeed, once Petitioner proceeded on appeal, the Michigan courts gave Petitioner's Fourth Amendment claim full and proper consideration. The Michigan Court of Appeals determined that it lacked merit.  Petitioner raised the issue again in his application for leave to appeal to the Michigan Supreme Court, which denied his application.  Therefore, even if this Court were to disagree with the determination of the Michigan courts, that disagreement would be insufficient to satisfy the second prong of the Sixth Circuit standard.  *Gilbert*, 763 F.2d at 824.

Because Petitioner has failed to demonstrate either prong of *Stone v. Powell*, his claim of illegal search and seizure is barred on habeas review.  The merits of Petitioner's Fourth Amendment challenges become relevant, nonetheless, despite *Stone v. Powell*, because of Petitioner's related ineffective assistance of counsel claim.  In *Kimmelman v. Morrison*, 477 U.S. 365 (1986), the Supreme Court stated: "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to

15

demonstrate actual prejudice."  *Id.* at 375.  For that reason, the Court will review the Michigan

Court of Appeals' analysis of Petitioner's Fourth Amendment claim under the AEDPA standard.

> The Michigan Court of Appeals resolved Petitioner's search and seizure issue as

follows:

> Defendant next argues that his Fourth Amendment right against unreasonable
> searches and seizures was violated when the trial court admitted text messages
> between himself and his fiancée about his condom purchases, as well as evidence
> that he visited an Internet site called "Banging the Babysitter."  Defendant contends
> that a search of his entire phone fell outside the scope of the search warrant because
> the warrant limited the evidence sought to be searched for and seized.

> \*       \*       \*

> Defendant's argument confuses the place to be searched with the items to be seized.
> The police obtained a warrant to search defendant's entire phone.  The warrant
> states, "The person, place, or thing to be searched is described as . . . Jesse
> Easterwood's Iphone 4."  The warrant specified the items of evidence "to be
> searched for and seized" as:

>> Any and all photos, messages, emails, facebook contacts or messenger
>> messages that are with [DP] or about [DP].  Any information that gives
>> any type of information of Jesse Easterwood's location, work schedule,
>> softball schedule, or need for a babysitter in 2015.  Any information about
>> any contact with [DP].

> Accordingly, the search warrant authorized the police to search defendant's entire
> phone for evidence of communications with or about DP, defendant's need for a
> babysitter, and any type of contact with DP.  Defendant's text messages and his
> Internet browsing history are two areas within defendant's phone where police
> could likely expect to find the evidence described in the search warrant.  See, e.g.,
> *People v Keller*, 479 Mich 467, 479; 739 NW2d 505 (2007) (holding that the
> authorized search for marijuana "permitted police officers to search the entire house
> and to investigate containers in which marijuana might be found").

> A lawful search of a premises "generally extends to the entire area in which the
> object of the search may be found and is not limited by the possibility that separate
> acts of entry or opening may be required to complete the search."  *United States v
> Ross*, 456 US 798, 820-821; 102 S Ct 2157; 72 L Ed 2d 572 (1982).  Similarly, a
> warrant to search a vehicle "would support a search of every part of the vehicle that
> might contain the object of the search."  *Id.* at 821.  "When a legitimate search is
> under way, and when its purpose and its limits have been precisely defined, nice
> distinctions between closets, drawers, and containers, in the case of a home, or
> between glove compartments, upholstered seats, trunks, and wrapped packages, in

the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." *Id*.

A police officer exceeds the scope of a valid search if the officer takes action unrelated to the objectives of the authorized intrusion, and the officer exposes to view concealed portions of the premises or its contents. See *Arizona v Hicks*, 480 US 321, 324-26, 328; 107 S Ct 1149; 94 L Ed 2d 347 (1987) (holding that an officer's moving of stereo equipment to check the serial number was an unreasonable search under the Fourth Amendment, unsupported by probable cause, when the initial purpose of the intrusion onto the premises was to search for people or weapons). In determining whether a search exceeded the scope of a warrant, the test is whether the search was unreasonable because only unreasonable searches are prohibited by the Fourth Amendment.

Here, the police acted reasonably within the scope of the search warrant for the cell phone when they searched the Internet history, at least cursorily, because the Internet history could reasonably be expected to contain information sought to be seized. Thus, the police were lawfully present in the area being searched. Even if it could be argued that the warrant did not expressly authorize the seizure of evidence discovered in the Internet search history, the seizure of the evidence falls within the plain-view exception to the warrant requirement. See *Coolidge v New Hampshire*, 403 US 443, 465; 912 S Ct 2022; 29 L Ed 2d 564 (1971). When officers are legally present in the area being searched, they are authorized to seize any evidence obviously incriminating, under the plain-view doctrine. See *Horton v California*, 496 US 128, 136-137; 110 S Ct 2301; 110 L Ed 2d 112 (1990). Because DP testified that defendant used condoms during the sexual assaults, and because defendant denied having or using condoms, evidence regarding defendant's purchase of condoms was clearly incriminating, as was defendant's visit to a website involving sexual acts with babysitters.

(Mich. Ct. App. Op., ECF No. 1-6, PageID.140-141.)

Because Petitioner does not address the court of appeals' analysis, but simply repeats the arguments he raised to that court, he never explains how the court's determinations are contrary to, or an unreasonable application of, clearly established federal law. The appellate court's analysis expressly relies on relevant Supreme Court authority—clearly established federal law. There is nothing in the court's opinion, and there is certainly nothing in Petitioner's submissions, that suggests that the Michigan Court of Appeals applied the clearly established federal law unreasonably. Accordingly, Petitioner has not shown the state court's determination that Petitioner's Fourth Amendment argument lacks merit is wrong.

Building on that conclusion, the court of appeals also rejected Petitioner's ineffective assistance claim:

> Because the seizure of the evidence was not outside the scope of the search warrant, we reject defendant's alternative argument that his trial counsel was ineffective because he failed to file a motion to suppress the evidence. There is no reasonable probability that the outcome in the trial court would have been different had trial counsel filed a motion to suppress the evidence. See *Strickland*, 466 U.S. at 687-688.

(*Id*., PageID.141.)   The court of appeals' determination of the ineffective assistance claim expressly relies upon, and is entirely consistent with, clearly established federal law.   As noted above, "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley*, 706 F.3d at 752.   Therefore, Petitioner has failed to demonstrate that the court of appeals rejection of his ineffective assistance claim relating to the failure to file a motion to suppress is contrary to, or an unreasonable application of, clearly established federal law.

## C.   Hearsay evidence

As set forth above, the victim told three other people about Petitioner's criminal sexual conduct: her friend, CH, during October of 2015; the counselor at the detention facility, Melissa Hagen, during December of 2015; and Detective LaCross during January of 2016.   Each of the three testified at the trial regarding what the victim had told them.   Petitioner contends his trial was rendered unfair by the admission of the hearsay testimony of Melissa Hagen and Detective LaCross because it bolstered the victim's testimony in a case that came down to a credibility contest between the victim and Petitioner.

The trial court admitted the hearsay testimony offered by Melissa Hagen over defense counsel's objection.   The court reasoned that the testimony fit within the hearsay exception provided by Michigan Rule of Evidence 801(d)(1)(B):

> A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . .

18

consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . . ."

Mich. R. Evid. 801(d).  When Detective LaCross was asked to testify regarding his interview of the victim, defense counsel did not object, presumably anticipating that the trial court would permit the testimony under the same exception.

The Michigan Court of Appeals explained the showing that must be made before a "prior consistent statement" is admitted under the rule:

> (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and, (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose.

(Mich. Ct. App. Op., ECF No. 1-6, PageID.142.)  The court of appeals concluded that Hagen's testimony did not fit within the exception because the statement was not made prior to the time the alleged motive to fabricate arose.  (*Id*.)  Because Detective LaCross interviewed the victim after Hagen, LaCross's testimony necessarily suffered the same defect.[3]

Although the court of appeals concluded that Hagen's testimony should not have been admitted under the "prior consistent statement" exception, the court provided no relief because the error was harmless:

> The erroneous admission of evidence is, however, presumed harmless and reversal of a conviction based on erroneously admitted evidence will not be granted unless, "after an examination of the entire cause, it shall affirmatively appear that the error asserted has resulted in a miscarriage of justice." *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999) (quotation marks and citation omitted).  That is, unless the defendant is able to show that it is more probable than not that the error was outcome determinative, this Court will not reverse.  *Id*. at 495-496.  "An error is deemed to have been 'outcome determinative' if it undermined the reliability of the

---

[3] Petitioner does not object to CH's testimony regarding what the victim told him about the criminal sexual conduct, presumably because the victim's "prior consistent statement" was made to CH before the motive to falsify arose.

verdict." *People v Rodriguez*, 463 Mich 466, 474; 620 NW2d 13 (2000) (citation omitted).

Hagen's testimony that DP told her that she had been sexually abused by defendant did not provide details of the assaults as described by DP. Hagen's testimony simply identified defendant as the perpetrator of the assaults. Hagen's testimony identifying defendant as her abuser was therefore cumulative of similar testimony by DP and CH. "Although whether a hearsay statement is cumulative is not dispositive to this analysis under Michigan law, it is an indicator that the error was not highly prejudicial, particularly in the presence of other corroborating evidence." *People v Gursky*, 486 Mich 596, 623; 786 NW2d 579 (2010). As in *Gursky*, the improperly admitted portions of Hagen's testimony in this case did not introduce any new information to the jury. Instead, Hagen's testimony was cumulative to DP's in-court testimony that DP had been assaulted and to CH's testimony that DP told him that she had been raped by defendant. See *id*. The erroneous admission of this cumulative hearsay testimony did not prejudice defendant. See *People v Rodriquez (On Remand)*, 216 Mich App 329, 332; 549 NW2d 359 (1996).

(Mich. Ct. App. Op., ECF No. 1-6, PageID.142.) The court of appeals reached the same conclusion with regard to Detective LaCross's testimony: "The admission of the evidence was not highly prejudicial to defendant because it was cumulative to DP's in-court testimony and CH's testimony as well as to other corroborating evidence." (*Id*., PageID.143.) Again, because Petitioner simply reiterates his appellate arguments, he never directly addresses the court of appeals conclusion that the admission of the hearsay evidence was cumulative and harmless.

As noted above, in *Estelle*, 502 U.S. at 62, the Supreme Court made clear that an inquiry into a state-law issue, such as whether evidence was properly admitted or improperly excluded, "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted);

*accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard with regard to the admission of hearsay evidence because there is no Supreme Court authority concluding that due process is violated by the admission of hearsay evidence. *Desai v. Booker*, 732 F.3d 628, 630 (6th Cir. 2013) ("The first and most conspicuous failing in Desai's petition is the absence of a Supreme Court holding granting relief on his due process theory: that the admission of allegedly unreliable hearsay testimony violates the Due Process Clause. That by itself makes it difficult to conclude that the state court of appeals' decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'").

But, here, the state court did not decide the evidence was admissible; the court concluded it was not. Nonetheless, the court rejected Petitioner's challenge because it determined that even if the testimony was improperly admitted, because it was cumulative of properly admitted and otherwise corroborated evidence, the error was harmless.

On habeas review, a court must assess harmlessness under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993),[4] regardless of whether the state appellate court

---

[4] In *Davenport v. MacLaren*, 964 F.3d 448 (6th Cir. 2020), the Sixth Circuit clarified that the standard applicable to a state-court harmlessness finding is only the *Brecht* standard, not the *Brecht* standard coupled with a an evaluation of

recognized the error and reviewed it for harmlessness.  *See Hargrave v. McKee,* 248 F. App'x 718, 728 (6th Cir. 2007) (citing *Fry v. Pliler*, 551 U.S. 112, 120-21 (2007)); s*ee also Vasquez v Jones*, 496 F.3d 564, 574-75 (6th Cir. 2007).  The *Brecht* standard requires the Court to consider whether the constitutional error in the state criminal trial had a "substantial and injurious effect" on the result.  *Brecht*, 507 U.S. at 638.

For the same reason the state appellate court concluded any error was harmless under state law, i.e. not outcome determinative, Petitioner cannot show that the error had a substantial and injurious effect on the result.  In *Wong v. Belmontes*, 558 U.S. 15 (2009), the Supreme Court concluded that adding cumulative evidence to what was already there "would have made little difference" such that Belmontes could not "establish *Strickland* prejudice."[5]  *Wong*, 558 U.S. at 22.

Just a couple of months ago, the Sixth Circuit assessed whether the introduction of cumulative evidence could be considered prejudicial in *England v. Hart*, 970 F. 3d 698 (6th Cir. 2020), stating:

> Next, England argues that the affidavit was corroborative, rather than cumulative, of the aspects of the Woodfork statements that the prosecution relied on. "[E]vidence that is merely cumulative of that already presented does not . . . establish prejudice." *Getsy v. Mitchell*, 495 F.3d 295, 313 (6th Cir. 2007) (en banc) (quoting *Broom v. Mitchell*, 441 F.3d 392, 410 (6th Cir. 2006)).  Determining what constitutes cumulative evidence can be difficult, as "[o]ur cases . . . do not tell us clearly when evidence becomes sufficiently different to no longer be 'cumulative' or at what level of generality one must compare the evidence." *Vasquez v.*

---

the state-court's application of the *Chapman* standard under the AEDPA standard.  *Id.* at 454-59 (citing *Davis v. Ayala*, 576 U.S. 257, 268 (2015) (holding that the *Brecht* test subsumes the limitations imposed by AEDPA) (citing *Fry*, 551 U.S. at 119-20)).

[5] The absence of *Strickland* prejudice is not the same thing as harmlessness under *Brecht. See Kyles v. Whitley,* 514 U.S. 419, 436 (1995) (explaining that the *United States v. Agurs*, 427 U.S. 97 (1976), materiality standard, later adopted as the prejudice standard for ineffective assistance of counsel claims, requires the habeas petitioner to make a greater showing of harm than is necessary to overcome the harmless error test of *Brecht*).  Thus, there might be some level of harm that is insufficient to establish prejudice under *Strickland* but sufficient to overcome the harmlessness test of *Brecht*.  Yet, if there is no prejudice under *Strickland*, it is also entirely possible—even, likely—that the error is so nonprejudicial that it is harmless.

> *Bradshaw*, 345 F. App'x 104, 120 (6th Cir. 2009).  Our most frequent formulation of the standard is that "new evidence" is not cumulative to it "differs both in strength and subject matter from the evidence actually presented at [trial]."  *Goodwin v. Johnson*, 632 F.3d 301, 327 (6th Cir. 2011).

*England*, 970 F.3d at 714-15.[6]  Under the *England* standard, Hagen's and LaCross's recounting of the victim's reports to them were plainly cumulative.  They did not differ in "strength" or "subject matter" from the victim's trial testimony and there was nothing about the timing or circumstance of the disclosures to Hagen or LaCross that lent any meaningful corroborative value to the testimony.  Accordingly, the Court concludes that any error was not only not prejudicial, it was also harmless under *Brecht,* and Petitioner is not entitled to habeas relief on the claim.

## III.    Application to proceed *in forma pauperis*

Petitioner has requested leave of court to proceed *in forma pauperis* (ECF No. 2) under 28 U.S.C. § 1915(a)(1) and has filed an affidavit of indigence.  It reasonably appears that paying the cost of this filing fee would impose an undue financial hardship.  *Prows v. Kastner*, 842 F.2d 138, 140 (5th Cir. 1988).  Accordingly, the Court will grant his application.

---

[6] The Sixth Circuit has found the court of appeals' reasoning persuasive in multiple cases when evaluating prejudice and harmlessness.  *See, i.e., Barnes v. Warden, Ross Corr. Inst.*, No. 19-3389, 2019 WL 5576345, at *2 (6th Cir. Sept. 16, 2019) ("Review of the record confirms that Andrews's testimony—whether hearsay or not—was cumulative to Martin's own testimony about the incident.  Even assuming the testimony did amount to hearsay, Barnes cannot make a substantial showing that counsel's failure to object resulted in prejudice."); *Dobbs v. Trierweiler,* No. 16-2209, 2017 WL 3725349, at *2 (6th Cir. Apr. 7, 2017) ("[T]he testimony is cumulative with regard to the second shooting . . . [a]nd because the testimony was harmless, Dobbs could not show that his attorney's failure to object to it was objectively unreasonable or that prejudice resulted."); *Thurmond v. Carlton*, 489 F. App'x 834, 842 (6th Cir. 2012) ("Because Baxter's [hearsay] testimony was cumulative to the victim's, the lack of an objection (likely to be sustained) did not prejudice the defense."); *Anthony v. DeWitt*, 295 F.3d 554, 564 (6th Cir. 2002) ("[A]dmission [of the hearsay statements] would constitute harmless error because of our conclusion that they did not have a substantial and injurious effect or influence in determining the jury's verdict. . . . Prior to Regina Knox's testimony, there was sufficient corroborating testimony from John Knox and Mary Payne describing the events on the evening of Smith's murder, making Regina Knox's hearsay testimony in this regard cumulative. . . . [H]abeas petitioners are not entitled to relief based on trial error unless they can establish that the error resulted in actual prejudice . . . .").

## IV.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.  Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **<u>Conclusion</u>**

The Court will enter a judgment dismissing the petition and an order granting

Petitioner's application to proceed *in forma pauperis* and denying a certificate of appealability.


Dated:   <u>October 20, 2020</u>          <u>/s/ Janet T. Neff</u>
                                            Janet T. Neff
                                            United States District Judge